# Constitutionality of a Joint Resolution Requiring the President to Propose a Balanced Budget Every Year

A proposed joint resolution requiring the President annually to propose a budget in which estimated expenditures do not exceed estimated receipts, if made effective, would be invalid.

August 16, 1955

MEMORANDUM OPINION FOR THE ACTING DEPUTY ATTORNEY GENERAL

The proposed resolution, introduced on June 20, 1955, by Representative Cannon, provides, in its entirety:

> That hereafter, except in time of war or national emergency, the estimated expenditures contained in the Budget for the fiscal year for which presented shall not exceed the estimated receipts during such fiscal year: *Provided*, That if, in accomplishing such requirement it should become necessary to reduce or eliminate objects or projects which the President should deem it would not be in the public interest to do, such reductions or eliminations shall be enumerated in the message transmitting the Budget along with definite recommendations for financing their cost.

H.R.J. Res. 346, 84th Cong. The resolution, if made effective, would operate as a limitation on the Act of June 10, 1921, ch. 18, § 201(a), 42 Stat. 20, *codified as amended at* 31 U.S.C. §§ 11 *et seq.*, which provides that the President shall transmit to the Congress the budget, containing, among other matters, "estimated expenditures and proposed appropriations necessary in his judgment for the support of the Government for the ensuing fiscal year." 31 U.S.C. § 11(d) (1950).

Article II, Section 3 of the Constitution provides that "[h]e [the President] shall from time to time give to the Congress Information of the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient; . . . he shall take Care that the Laws be faithfully executed . . . ."

The proposed resolution would impinge upon the affirmative duties thus imposed upon the President in at least two significant respects. First, in order to fulfill his obligation to transmit information to the Congress, together with such measures "as he shall judge necessary and expedient," the President is given absolute discretion as to the character of information and recommendations he may choose to transmit. The proposed resolution plainly would frustrate the President's responsibility of advising the Congress of the needs of the nation, the measures for fulfilling those needs, as his judgment dictates, and the required appropriations therefor. It appears too clear for serious question that a legislative fiat which seeks to remove the President's unlimited judgment in communicating with the Congress is in violation of the cited provisions of the Constitution.

Second, the President's responsibility for the faithful execution of the laws requires that he be given sufficient funds to discharge his constitutional duty. The proposed resolution would have the obvious effect of preventing the proper performance of executive functions through the arbitrary compression of need up to but not exceeding estimated receipts. Consequently, through legislative processes unrelated to appropriations, the Congress will continue to enact legislation requiring administration and enforcement by the Executive Branch. However, since for many years past the nation has lived under an unbalanced-budget economy (apart from war and national emergency periods), the execution of the laws has required expenditures in excess of receipts. It is thus obvious that the President would be given laws to execute for which an appropriation request could not be made. The inevitable consequence of any such posture would be an inability to carry out the constitutional mandate of faithfully executing the laws.

It may also be observed that the achievement of a balanced budget, if that should be the will of the Congress, is primarily a legislative matter. Clearly, in largest part, it is the congressional enactments which require expenditures in excess of receipts. The resolution, therefore, attempts to shift non-delegable legislative functions to the Executive Branch, in violation of the principle of separation of powers.

The exception provided for times of war or national emergency do not relieve the resolution of its aspects of invalidity. The legal defects discussed would cause forbidden interference with the executive process during unexceptional periods.

It may be argued that the proviso for "public interest" objects or projects would permit the President to accomplish all necessary purposes since, presumably, all requests for appropriations would be for objects or projects in the public interest. If this were so, however, the resolution would need to be viewed as being wholly without purpose. Since, by plain intention, it attempts to place a limitation upon the President, we should not read it as being self-defeating.

For the foregoing reasons, we are of the view that Resolution 346, if made effective, would be invalid.

FREDERICK W. FORD
*Acting Assistant Attorney General*
*Office of Legal Counsel*